UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re Alane Taratuska,<br>  Debtor; | )<br>)<br>) | |
| The Education Resources<br>  Institute, Inc.,<br>  Appellant | )<br>)<br>)<br>) | |
| v. | )<br>) | CIVIL ACTION NO.<br>07-11938-RCL |
| Alane Taratuska,<br>  Appellee. | )<br>)<br>) | |

**MEMORANDUM AND ORDER**

The Education Resources Institute, Inc. ("TERI") has appealed an order of Judge Somma of the bankruptcy court granting summary judgment for Alane Taratuska ("Taratuska"). Specifically, TERI claims that the court erred in finding that the loan at issue was dischargeable because it was not a loan made under a program "funded in whole or in part" by a nonprofit institution under 11 U.S.C. § 523(a)(8)[1] of the Bankruptcy Code. After careful consideration of the orders and the record of proceedings of the bankruptcy court in this case, the record of proceedings in the bankruptcy court, and the parties' arguments

---

[1] Although this provision has since been amended under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the prior version was applicable to Taratuska's loan at issue here.

1

in the briefs submitted and at the hearing held on May 7, 2008, I REVERSE the decision of the bankruptcy court.

## Jurisdiction

This is an interlocutory appeal, and Taratuska's claims against another defendant, the U.S. Department of Education, remain pending. This Court has jurisdiction to hear TERI's appeal under 28 U.S.C. § 158(a).[2]

## Facts and Procedural History[3]

Taratuska borrowed $15,277.56 in July 1996 from Society National Bank (its successor is Key Bank)(hereinafter both entities referred to as "Bank") including the loan as well as guarantee fees to TERI in order to finance her graduate education at Boston University. The Bank is a for-profit institution. TERI, a nonprofit institution, guaranteed the payment of principal and interest due under the promissory note. Taratuska borrowed under a program, the Financed Private Loan Program, of

---

[2] This section provides that the district courts of the United States shall have jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges, with leave of the court. The Court granted the motion for leave to appeal on May 7, 2008.

[3] The facts set forth below are undisputed and are derived from the bankruptcy court's August 23, 2007 Revised Memorandum and Order granting Taratuska's motion for summary judgment and from the joint Stipulation by the parties submitted as part of the Designated Documents of Record.

an overall Graduate Access Loan Program. The Access Group, a nonprofit organization which operates a student loan marketing service, administers the Graduate Access Loan Program, as well as the Law Access Program and the Business Access Program.

Taratuska filed for bankruptcy in February 2001, and the bankruptcy court entered an order of discharge in April 2001. Taratuska did not seek to discharge her student loans during that proceeding.

The Bank sold Taratuska's loan and others to the KeyCorp Student Loan Trust 1999-A. Taratuska later defaulted on the loan; TERI then paid it as the guarantor, received an assignment of the loan from the lender in September 2000. TERI then obtained a default state court judgment in November 2002 against Taratuska for the amount owed. In May 2005, Taratuska filed a motion in the state court seeking to vacate the default judgment, but the motion was denied in October 2005.

In December 2005, Taratuska moved to reopen her bankruptcy case, which was granted, and Taratuska commenced this adversary proceeding. This case is the appeal from the bankruptcy court's Memorandum and Order issued on August 16, 2007, and subsequently revised on August 23, 2007 (Revised Memorandum and Order, hereinafter "Order") in which the bankruptcy court granted the plaintiff's motion for summary judgment and denied the defendant's cross-motion for summary judgment. On August 27,

2007, TERI filed a notice of appeal. On October 11, 2007, TERI filed a Motion for Leave to Appeal with this Court and Taratuska filed a Concurrence in Motion for Leave to Appeal.

On May 7, 2008, this Court held a motion hearing on the appeal and granted the motion for leave to appeal, while taking under advisement the appeal itself.

## Analysis

This case concerns the interpretation of the prior version of 11 U.S.C. § 523(a)(8) (hereinafter "§ 523(a)(8)") of the Bankruptcy Code.[4]  That provision provided:

> A discharge...does not discharge an individual debtor from any debt...for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

Thus student loans are not dischargeable in bankruptcy if they are made under a loan program that is "funded in whole or in part" by a nonprofit institution; here, the nonprofit institution guaranteed the plaintiff's student loan and paid it upon her default. § 523(a)(8). In this action, the parties:

---

[4]See supra note 3.

4

> stipulated that the Loan would be excepted from discharge under Section 523(a)(8) only if it were 'made under any program funded in whole or in part by a governmental unit or nonprofit institution' and not under any of the other discharge exceptions in that section. TERI has further acknowledged that neither the Loan nor the program at issue was funded by a governmental unit.

Order 2 n. 4. Thus, the issue on appeal is whether this loan was a loan made under a program funded in whole or in part by a nonprofit institution. As Bankruptcy Judge Somma made clear, if this loan is made under a program funded in whole or in part by a nonprofit institution, the loan is excepted from discharge in bankruptcy unless Taratuska is able to show that repayment of the loan would impose an undue hardship. Id. at 2. On the other hand, if the loan is not made under a program funded in whole or in part by a nonprofit institution, the loan is discharged at this stage, and the undue hardship issue is never reached at trial. Id.

The central issue then is purely based on statutory construction. As Bankruptcy Judge Somma wrote, "[u]ltimately, given the uncontroverted facts, this matter concerns differing interpretations of the statute and not disputes regarding such facts." Id. at 6. Further, the statutory construction given to the section by the bankruptcy court was a legal conclusion, which is reviewed de novo by this Court. Fed. R. Bankr. P. 8013. See also In re O'Brien, 318 B.R. 258 (S.D.N.Y., 2004)(finding that the issue should be decided as a matter of law, where the issue

5

was also the statutory construction of §523(a)(8) determining whether a nonprofit institution that guaranteed a loan could be granted a nondischargeability determination under the statute.)

Statutory construction begins with the text of the statute itself, where the language is given its ordinary or plain meaning. Telematics Intern., Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 706 (1st Cir. 1992). If a court finds upon examination of the text of a statute that the meaning is plain, the court does not go further, but "even seemingly straightforward text should be informed by the purpose and context of the statute. Both this court and the Supreme Court have checked a sense of a statute's plain meaning against undisputed legislative history as a guard against judicial error." Greebel v. FTP Software, Inc., 194 F.3d 185 (1st Cir. 1999)(citations omitted).

The First Circuit has stated in a bankruptcy appeal,"It is an orthodox tenet of statutory construction that 'where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" In re 229 Main Street Ltd. Partnership, 262 F.3d 1, 5 -6 (1st Cir., 2001), quoting Duncan v. Walker, 531 U.S. 991 (2001). Thus, from the plain meaning of the statute, it is clear that it is a program that must be funded by a nonprofit institution under this section, rather than a

particular loan itself.[5]

This is in contrast to the statutory language in the first part of that section, which speaks of, "A discharge...does not discharge an individual debtor from any debt...for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit." 11 U.S.C. § 523(a)(8). This language speaks of an "overpayment or loan made, insured or guaranteed" by the government, whereas the phrase at issue here speaks of an overpayment or loan "made under any program funded in whole or in part by a governmental unit or nonprofit institution." Id. The first phrase is referring to particular loans made, insured or guaranteed by the government, whereas the second phrase refers to loans made under *programs* funded in whole or in part by the government or nonprofit institutions, a much broader proposition. As the bankruptcy court in <u>Adam H. Klein</u> v. <u>The Education Resources Institute, Inc. (In re Klein)</u>, Ch. 11 Case No. 92-B-44249, Adv. No. 96-8828A (S.D.N.Y. April 29, 1997), found in a similar case, the first and second clauses of the statute are addressing different concerns, where the "second clause has a broader and different focus since it encompasses governmental units and nonprofit institutions and focuses on loan programs and not on particular loans," unlike the first clause which "deals

---

[5]This has been the conclusion of a number of courts, as well as the opinion of the bankruptcy court in this case below. See e.g. Order 6 n. 10.

solely with loans made[,] guaranteed or insured by governmental units." <u>Id.</u> at 8.

There have been a number of courts which have interpreted the phrase in question, including the <u>Klein</u> court. As TERI argues persuasively, the courts that have interpreted this clause of the statute in similar circumstances as the case on appeal here have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play. For example, the <u>Klein</u> court found that even though the Bankruptcy Code does not define "funded," and that the term is not synonymous with the term "guaranteed," the plain language of the statute dictated construing the statute's funding programs language "to include guarantees like those at issue herein." <u>Klein</u>, slip op. at 13. The <u>Klein</u> court found further support in its conclusion in the legislative history of the statute. <u>See</u> <u>id.</u> at 13-14. <u>See also</u> <u>Educ. Res. Inst., Inc.</u> v. <u>Hammarstrom (In re Hammarstrom)</u>, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989)(examination of legislative history of the section, determining that the scope of the section included educational loans not directly payable to the government or nonprofits under the "any program funded in whole or in part" language.)

In this case, the Bankruptcy Court below interpreted § 523(a)(8) program funding clause as not including a nonprofit

institution's guaranteeing of a loan, relying on Black's Law Dictionary definitions of funding and a guaranty to reach that conclusion, but also noting in a footnote that, "[o]ther courts take a different view," and citing three decisions. Order 7 n. 12. In fact, as seen below, other courts uniformly[6] take a different view of the clause, and the Klein case summarized supra is just one of those.

For example, a bankruptcy court in the Northern District of California determined in deciding a motion to dismiss that, "Congress intended to include within §523(a)(8) all loans made under a program in which a nonprofit institute plays any meaningful part in providing funds." Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom), 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989). That court found that where a nonprofit institution had an agreement to purchase the private bank loans made to pay expenses for higher education, the loan program was funded at

---

[6]The only exception is that of the bankruptcy court below in In re Pilcher, 149 B.R. 595 (9th Cir. BAP, 1993), but the BAP reversed and remanded in that case. See In re Pilcher, 139 B.R. 948 (Bkrtcy. D. Ariz., 1992). However, an examination of the bankruptcy judge's decision showed that in that case, the loan was funded by a for-profit bank, assigned to another for-profit, and after the default, assigned to another for-profit organization. Id. There was no participation in that particular loan by a nonprofit and no guarantee by a nonprofit. Id. The BAP reversed on appeal because the loan program included other loans that were guaranteed by nonprofits, and because the Law Access Program also had a nonprofit providing law school admissions information and services under its rubric. Thus, even the reasoning of the decision below in favor of the debtor in In re Pilcher does not assist Taratuska here.

least in part by that nonprofit institution because the nonprofit played a "meaningful part" in providing funds. Id.

In re Pilcher determined as well that § 523(a)(8) included under its rubric programs that were funded by nonprofit institutions, where the involvement of those nonprofits was by guaranteeing some, but not all, of the loans of the program (others were guaranteed by private banks) and where another nonprofit participated in the program by providing information about law school admissions. In re Pilcher, 149 B.R. 595 (9th Cir. BAP, 1993). That case is also notable for its determination that the Law Access Program, through which the student received her law school loan, received nonprofit funding by that involvement by the nonprofits (the guaranteeing and providing admissions information) even where the particular loan at issue was made and guaranteed by for-profit banks. Here, of course, the loan was made by a for-profit bank, but a nonprofit institution, TERI, guaranteed and paid after default this particular loan at issue.

There are even cases which precisely mimic the factual situation of this case, involving only a nonprofit guarantor. See, e.g., In re McClain, 272 B.R. 42 (Bkrtcy. D.N.H. 2002). In the McClain case, Bankruptcy Court Chief Judge Mark Vaughn held that this section of the Code applied to a nonprofit guarantor (also TERI) of student loans funded by a for-profit entity. Id.

at 45. The <u>McClain</u> court explained that, "Congress used expansive language in its designation of which student loans are non-dischargeable [under § 523(a)(8)], indicating that the program pursuant to which the loan was made must be funded in part by a non-profit entity, not the loan itself." <u>Id.</u> at 46 (citations omitted). The <u>McClain</u> court found that the for-profit entity's funding of the loans "was conditioned upon TERI's participation in guaranteeing the loans. Thus, TERI played a meaningful part in procurement of the loans, making them nondischargeable pursuant to the language of § 523(a)(8)." <u>Id.</u>

The debtor in the series of <u>O'Brien</u> decisions made the same argument as Taratuska, namely that because § 523(a)(8) in the first clause contains the phrase "guaranties" of loans and in another clause it refers to the "funding" of programs, that guaranties cannot be considered to fund programs; however, the Bankruptcy Court in <u>O'Brien</u> rejected that argument, as did the District Court in affirming the Bankruptcy Court, and the Second Circuit affirmed on appeal. <u>See</u> <u>In re O'Brien</u>, 299 B.R. 725 (Bkrtcy. S.D.N.Y. 2003), <u>In re O'Brien</u>, 318 B.R. 258 (S.D.N.Y., 2004), and <u>In re O'Brien</u>, 419 F.3d 104 (2d Cir, 2005). The Second Circuit noted, for example, that "[w]hile it may be true that TERI merely guaranteed, without funding, O'Brien's particular loan, it is an entirely different question whether TERI funded the loan <u>program</u> under which O'Brien's loan was

made...TERI was clearly devoting some of its financial resources to supporting the program." In re O'Brien, 419 F.3d 104, 106 (2d Cir, 2005)(citations omitted)(emphasis in original). The Second Circuit also stated, though it did not rest its decision on this clause, that the Promissory Note for the loan itself stated that it was subject to the limitations on dischargeability contained in § 523(a)(8) as a loan program funded in part by a nonprofit institution. Id.

The district court in the O'Brien case affirmed the bankruptcy court for two reasons which were then cited with approval by the Second Circuit. Id. at 105.

> First, the district court noted that "the language of § 523(a)(8) focuses on loan programs, not individual loans. There is no dispute that the Appellant's Loan was funded through a program ... which was funded by a nonprofit institution, the Appellee." Second, the district court found that TERI "actually did 'fund' money when the Appellant defaulted on her obligation to repay the Loan." Following the default, TERI paid Key Bank in accordance with its obligations. The district court thus determined that TERI's guarantee played a meaningful part in the funding of the Loan to the Appellant through the Program. In essence, the Loan was funded by TERI within the meaning of that term pursuant to § 523(a)(8) and was non-dischargeable.

Id. at 105 -106 (citations omitted).

When Taratuska defaulted on the loan at issue, TERI paid it as the guarantor, which demonstrates that a nonprofit, TERI, funded the program. For example, the Second Circuit and the District Court in O'Brien found that to be one of the dispositive

12

factors, though it is not clear from those decisions whether that by itself would be enough; the O'Brien district court also concluded that in addition to actually paying the loan at the time of default, the loan was funded through a program which was funded by a nonprofit institution, because the bank made a loan "as part of the Program, by which Key Bank's loans were guaranteed by the Appellee [TERI]." In re O'Brien, 318 B.R. 258, 262 (S.D.N.Y., 2004).[7]

There is sufficient evidence to determine that TERI did fund the loan program under which Taratuska received her loan, where 1) TERI paid the loan after default, 2) the promissory note for the loan itself stated not only that TERI would guarantee the loan and Taratuska would pay guarantee and supplemental guarantee

---

[7] The O'Brien district court also took into account an affidavit from TERI's counsel which affirmed that the Bank would not have loaned the funds without the guarantee. Id. at 262-63.
  In the case at bar, there is a similar affidavit from the same counsel for TERI, Michael Beatty, stating that the bank would not have made the loan without the guarantee from TERI. However, Bankruptcy Judge Somma struck that portion of the affidavit in his decision, finding that Taratuska had argued successfully that Beatty was incompetent to testify about what the bank would or would not have done in terms of making the loan initially without the guarantee. While Beatty may have had sufficient personal knowledge to testify to this, review on an evidentiary finding by the bankruptcy court is under the abuse of discretion standard. See Williamson v. Busconi, 87 F.3d 602 (1st Cir., 1996)(citations omitted)("Evidentiary rulings by the bankruptcy court are subject to the 'abuse of discretion' standard.") As use of the Beatty affidavit is not necessary for the Court's decision here given the other evidence that TERI did fund the loan program, the Court declines to reach this question.

fees for this, but also that the loan was subject to the limitations on dischargeability contained in § 523(a)(8) as a loan program funded in part by a nonprofit institution,[8] 3) the Bank's SEC registration statement shows that the loans had to be reviewed by the guarantor and guaranteed in order to be disbursed,[9] and finally, 4) where TERI maintained money in segregated reserves to support its guarantee obligations, thus devoting financial resources to the loan program.[10] Furthermore, "funding" a loan program has been found by other courts to embrace the situation where a nonprofit institution is the guarantor of the loans, including where, as here, that guarantor actually did fund the loan at issue at the time of default. See, e.g., In re O'Brien, 299 B.R. 725 (Bkrtcy. S.D.N.Y. 2003), In re O'Brien, 318 B.R. 258 (S.D.N.Y., 2004), and In re O'Brien, 419 F.3d 104 (2d Cir, 2005).

For the foregoing reasons, the bankruptcy court's order is REVERSED and the Court holds that TERI, a nonprofit institution,

---

[8] The Second Circuit noted similar promissory note language in its O'Brien decision. In re O'Brien, 419 F.3d 104, 106 (2d Cir, 2005). The exact language from the promissory note at issue here is, "I acknowledge that The Access Group Program(s) is (are) funded in party by nonprofit institutions, and that this Promissory Note is therefore subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code." Stipulation, Ex. B, §N, ¶10.

[9] See Stipulation, Ex. D.

[10] Id.

funded the loan program under which Taratuska received her loan, within the meaning of § 523(a)(8).[11]

So ordered.

*William G. Young*
United States District Judge

Date: *August 25, 2008*

---

[11] The bankruptcy court also rested its decision to grant summary judgment for Taratuska on this issue on an alternative ground. Order 8. However, neither side has argued this on appeal, and, in fact, it goes against what the parties stipulated to and argued below and on appeal, namely that the § 523(a)(8) student loan program at issue was the Financed Private Loan Program, which was part of the Graduate Access Loan Program. See Stipulation ¶ 12. Taratuska even acknowledged this discrepancy in its brief on appeal. Tara Br. 20. The Court thus declines to rest its decision on this alternative ground.

15